IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JON L. BRUNENKANT, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 20-cv-00150-LKG |
| ) | |
| v. ) | Dated:  August 26, 2024 |
| ) | |
| SUBURBAN HOSPITAL ) | |
| HEALTHCARE SYSTEM, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

This civil dispute arises from medical care provided to Plaintiff *pro se*, Jon L. Brunenkant, at Suburban Hospital on October 10 and 11, 2015.  *See generally* ECF No. 1. Defendants, Suburban Hospital Healthcare System, Inc. and Suburban Hospital, Inc., have moved for partial summary judgment on Plaintiff's medical negligence and malpractice and corporate negligence claims, pursuant to Fed. R. Civ. P. 56.  ECF No. 117.  Plaintiff has also moved for partial summary judgment in his favor on these claims, pursuant to Fed. R. Civ. P. 56. ECF No. 119.  No hearing is necessary to resolve the pending motions.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** the Defendants' motion for partial summary judgment; (2) **DENIES** Plaintiff's cross-motion for partial summary judgment; (3) **DISMISSES** Defendant Suburban Hospital Healthcare System, Inc. as a defendant in this action; (4) **DENIES** Plaintiff's corporate negligence and medical negligence and malpractice claims, except for the claim based upon *respondeat superior*; and (5) **DENIES** Plaintiff's claim for lost profits.

1

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background[1]

This civil dispute arises from medical care provided to Plaintiff *pro se*, Jon L. Brunenkant, at Suburban Hospital on October 10 and 11, 2015. *See generally*, ECF No. 1. Plaintiff alleges in the complaint that Defendants were negligent in providing his medical care. *See generally*, ECF No. 1. Specifically, Plaintiff asserts the following claims against the Defendants in the complaint: (1) medical negligence and malpractice (Count 1); and (2) corporate negligence (Count 2). *Id.* at ¶¶ 41-55. As relief, Plaintiff seeks to recover monetary damages from the Defendants. *Id.* at ¶ 55, Prayer for Relief.

The Parties

Plaintiff Jon L. Brunenkant is a citizen of the District of Columbia. *Id.* at ¶ 1.

Defendant Suburban Hospital Healthcare System, Inc. is a Maryland community-based, not-for-profit hospital, located in Bethesda, Maryland. *Id.* at ¶ 2.

Defendant Suburban Hospital, Inc. is a Maryland corporation. *Id.* at ¶ 3.

The Plaintiff's Surgeries

As background, on October 10, 2015, Plaintiff presented to the emergency room at Suburban Hospital with complaints of severe abdominal pain, nausea and vomiting. *Id.* at ¶ 11. The emergency department attending physician suspected that Plaintiff had gallbladder disease (also known as cholecystitis) after ordering a CT scan of Plaintiff's abdomen, an electrocardiogram ("EKG") and an ultrasound correlation. *Id.* at ¶¶ 12-13; ECF No. 117 at ¶ 1. Thereafter, Dr. Said A. Daee, who Plaintiff alleges was Suburban Hospital's trauma doctor, and the emergency department attending physician confirmed the diagnosis of acute cholecystitis and recommended surgery to remove Plaintiff's diseased gallbladder. ECF No. 1 at ¶ 12-13; ECF No. 117 at ¶ 1.

---

[1] The facts recited in this memorandum opinion are derived from the complaint; the Defendants' motion for partial summary judgment and the memorandum in support thereof; and Plaintiff's cross-motions for partial summary judgement and the memorandum in support thereof. ECF Nos. 1, 117, 117-1, 119 and 119-1. Unless otherwise stated, the facts recited herein are undisputed.

On October 11, 2015, Dr. Daee performed surgery on Plaintiff, using a technique known as laparoscopic cholecystectomy (the "Lapchole Procedure"). ECF No. 1 at ¶ 14; ECF No. 117 at ¶ 1. Plaintiff was diagnosed with a bile duct injury following the Lapchole Procedure. ECF No. 1 at ¶ 32; ECF No. 117 at ¶ 1.

On October 22, 2015, Defendants arranged for Dr. Naveen Gupta to perform another surgery on Plaintiff. ECF No. 1 at ¶ 22. Dr. Gupta recommended that Plaintiff be transferred to Georgetown University Hospital. *Id.* at ¶ 23. And so, on October 24, 2015, Plaintiff was transferred to Georgetown University Hospital, where he underwent further evaluation of his bile duct injury. *Id.* at ¶¶ 26-27; ECF No. 117 at ¶ 1.

On November 20, 2015, Plaintiff returned to Georgetown University Hospital and underwent a procedure to repair his bile duct injury. *Id.* at ¶ 28; ECF No. 117 at ¶ 1.

The Plaintiff's Medical Expert

To support his negligence claims, Plaintiff has designated Dr. John G. Olinde as his medical expert. ECF No. 119-8. Dr. Olinde is certified by the American Board of Surgery and he is presently the Chief of Surgery at Wuesthoff Hospital Center in Melbourne, Florida. *Id.* at 8-9. Dr. Olinde prepared an expert report, dated August 4, 2022, and entitled "Medical Report On Laparoscopic Cholecystectomy Performed On October 11, 2015 By Dr. Said A. Daee At Suburban Hospital And Resulting Injuries," which is based upon his review of the medical records of Suburban Hospital and Georgetown University Hospital regrading Plaintiff's surgeries. *Id.*[2]

In his expert report, Dr. Olinde opines that there were breaches in the accepted standard of care by Dr. Daee with regards to Plaintiff's October 11, 2015, surgery. *Id.* at 1. Specifically, Dr. Olinde opines that the pulmonary embolism that Plaintiff experienced while recovering from this

---

[2] Dr. Olinde also prepared a report dated December 5, 2023, entitled "Supplemental Medical Report On Laparoscopic Cholecystectomy Performed On October 11, 2015 By Dr. Daee," which provides additional opinions regarding certain aspects of Mr. Brunenkant's recovery from the Lapchole Procedure, and concludes, among other things, that "Mr. Brunenkant suffered from a breach of the standard of medical care owed him when the laparoscopic cholecystectomy was performed on him on October 11, 2015" and "[h]is medical injuries necessitated an extensive hepatic resection (left hepatectomy, a bile resection and a Roux-en-Y hepaticojejunostomy) but these medical procedures did not create new injuries although they took time to recover from." ECF No. 123-2.

3

surgery "was likely caused by the laparoscopic cholecystectomy by Dr. Daee." *Id*. at 2. Dr. Olinde also opines that Plaintiff "immediately experienced persistent bilious drainage to the JP drain," following his surgery. *Id*. at 3. With regards to Plaintiff's corrective surgery at Georgetown University Hospital, Dr. Olinde observes that:

> On November 20, 2015, Mr. Brunenkant was brought to the operating room at Georgetown University Hospital by Dr. Lynt Johnson who performed a left hepatectomy, a bile duct resection and a Roux-en-Y hepaticojejunostomy to the right hepatic duct. As noted in Dr. Johnson's Operative Report, 12 clips were found and removed from around the hilar region in Mr. Brunenkant's abdomen; furthermore, there was no definable bile duct at the bifurcation- just an abscess cavity thus requiring the removal of the entire left side of Mr. Brunenkant's liver (left hepatectomy), the removal of Mr. Brunenkant's bile duct (bile resection) and the bypass of Mr. Brunenkant's right hepatic duct, common hepatic duct and common bile duct (Roux-en-Y hepaticojejunostomy).
>
> The Pathology Report showed marked periductal acute and chronic inflammation around the bile ducts in the hilar region but relatively normal parenchyma away from the bile ducts.

*Id*. at 4. In this regard, Dr. Olinde further observes that:

> In general, when performing a laparoscopic cholecystectomy, the incidence of a bile duct injury is not higher than 3%, and the incidence of a common bile duct injury is around 0.6% (only 0.1% when performed open), but certain factors can create a higher incidence of leaks and injuries. These factors include acute cholecystitis, bleeding, older age and male gender. Mr. Brunenkant fits into all these categories. Any surgeon performing this surgery laparoscopically would have needed to be prepared to switch to open very quickly if certain intraoperative conditions developed. In this case acute inflammation and bleeding were immediate intraoperative complications which Dr. Daee should have dealt with by switching to an open cholecystectomy. It is apparent that the bleeding became excessive as he proceeded with the laparoscopic surgery which clearly increased the complications of this difficult surgery. Dr. Daee's failure to quickly respond to the intraoperative conditions by switching to open surgery breached the standard of care.

> In continuing with the laparoscopic surgery, Dr. Daee further breached the standard of care with his surgical technique affected by the excessive bleeding and complex anatomy and then clipping Mr. Brunenkant's Common Hepatic Duct.

*Id*. at 4.

Given these findings, Dr. Olinde raises several concerns about the medical care provided to Plaintiff during his October 11, 2015, surgery at Suburban Hospital. First, Dr. Olinde observes that Dr. Daee's operative report states that he experienced problems with bleeding from the cystic artery after he had already clipped and divided it. *Id*. at 4. And so, Dr. Olinde opines that large volumes of blood were hemorrhaging during Plaintiff's surgery, which "clearly affected" Dr. Daee's vision. *Id.* at 4.

Second, Dr. Olinde opines that "as indicated in Dr. Gupta's ERCP report, the clip on common hepatic duct must have been in the hilum region," because the wire could not enter the right hepatic duct. *Id.* at 5. Third, Dr. Olinde opines that Plaintiff's complications from the laparoscopic cholecystectomy led to a higher incidence of pulmonary embolism, which occurred "despite Suburban Hospital's records indicating or suggesting that precautions against venous thromboembolism were taken during surgery and post-operatively." *Id.* at 6. In this regard, Dr. Olinde further opines that the resulting pulmonary embolism "burdened [Plaintiff] with having to take anticoagulation medications for the unforeseen future and all the risks and precautions associated with the treatment for a [p]ulmonary [e]mbolism." *Id.* at 6. And so, based upon these findings, Dr. Olinde concludes that the standards of care were breached with regards to Plaintiff's surgery at Suburban Hospital. *Id.* at 1, 4-6.

The Plaintiff's Negligence Claims

Plaintiff alleges that Dr. Daee failed to meet the standard of care while performing the Lapchole Procedure, thereby causing him to suffer a pulmonary embolism and injury to his bile duct. ECF No. 1 at ¶¶ 16-21. In this regard, Plaintiff alleges that he lost between 600-700 milliliters of blood during the surgery and that Dr. Daee "negligently damaged [his] bile ducts and connections to his liver thus seriously impairing [his] life and physical well-being." *Id.* at ¶ 15.

Plaintiff also alleges that, despite significant bleeding, no precautions were taken to protect him after the surgery. *Id.* at ¶ 19. In addition, Plaintiff alleges that the Defendants failed to inform him of the risks of surgery, or to mention a safer alternative. ECF No. 119-1 at 34.

5

Plaintiff also alleges that Defendants failed to obtain his informed consent for the surgery. *Id.* at 14. And so, Plaintiff contends that his corrective surgery on November 28, 2015, exposed all the medical malpractice of the Defendants, and shows the Defendants' negligence and malpractice in not providing him with the applicable standard of care. ECF No. 1 at ¶¶ 29, 32.

With regards to his medical negligence and malpractice claim, Plaintiff alleges that Defendants had "a duty to use that degree of skill and care typically exercised by health care practitioners in the same specialty with like training and experience in the same or similar circumstances," including, among other things, the duty to perform adequate procedures to determine the nature and circumstances of his condition, careful diagnosis of his condition, employment of appropriate procedures, surgery and/or treatment. ECF No. 1 at ¶¶ 42, 44. Plaintiff also alleges that Dr. Daee breached this duty by: (1) failing to prevent injuries to his "billary tree" during surgery; (2) failing to adequately dissect and identify the anatomy of his gallbladder; (3) failing to remove an excessive number of clips left in the hilar region of his liver; (4) failing to prepare an alternative surgical procedure to laparoscopic cholecystectomy; (5) failing to implement safeguards to minimize the risk of him suffering from a pulmonary embolism after surgery; (6) engaging in laparoscopic surgery when he could not see what he was doing; and (7) departing from the applicable standards of care in other ways. *Id*. at ¶ 45. Plaintiff also alleges that Defendant Suburban Hospital breached this duty by: (1) failing to prevent injuries to his "billary tree" during surgery; (2) failing to adequately dissect and identify the anatomy of his gallbladder; (3) failing to remove an excessive number of clips left in the hilar region of his liver; (4) failing to prepare an alternative surgical procedure to laparoscopic cholecystectomy; (5) failing to implement safeguards to minimize the risk of him suffering from a pulmonary embolism after surgery; (6) departing from the applicable standards of care in other ways; (7) "failing to adequately train [Dr. Daee] and/or by permitting Dr. Daee to provide substandard care;" and (8) permitting Dr. Daee to provide him with medical care without sufficient training, experience and/or understanding of "the anatomy involved, without taking the precautions and actions necessary to prevent severe and permanent injuries" to him. *Id*. at ¶ 46.

In addition, Plaintiff alleges that Suburban Hospital is responsible for the actions of Dr. Daee "by virtue of the doctrine of *respondeat superior*." *Id*. Lastly, Plaintiff alleges that the Defendants "committed further malpractice in trying to hide the injuries caused by [his] gallbladder surgery, and in trying to prevent [him] from being transferred to Georgetown

6

University Hospital." *Id*. at ¶ 47.  And so, Plaintiff contends that, as a direct and proximate cause of the Defendants' negligence, he "endured severe conscious pain and suffering, multiple surgical procedures, multiple hospital admission, adverse long term health problems, loss of income, emotional anguish, fear, anxiety, and embarrassment." *Id*. at ¶ 48.

With regards to his corporate negligence claim, Plaintiff alleges that he has a reasonable expectation to "receive the highest degree of care" from the trauma doctors at Suburban Hospital. *Id*. at ¶ 50.  Plaintiff also alleges that Suburban Hospital "failed to take adequate steps to ensure that its trauma center provided a standard of care expected in trauma centers in top hospitals, or even a standard of care typically expected in trauma centers in Montgomery and Prince George's Counties, Maryland." *Id*. at ¶ 52.  In this regard, Plaintiff contends that Suburban Hospital "failed in the selection, training and supervision of its trauma doctors" and "failed to provide the level of care that [he] expected based on his expectations of Suburban Hospital's reputation." *Id*.  And so, Plaintiff further contends that Defendant Suburban Hospital is "directly liable for its corporate negligence in the staffing, training and supervision of its trauma doctors." *Id*. at ¶ 53.

Lastly, Plaintiff represents to the Court in his sworn Affidavit that he reviewed Suburban Hospital's website before coming to the Suburban Hospital's Emergency/Trauma Care Department on October 10, 2015, and that he "noted upgrades apparently associated with [the hospital's] acquisition by [Johns Hopkins Health System Corporation]" on the website.  ECF No. 119-2 at ¶ 5.  Plaintiff also states in his Affidavit that, when he encountered Dr. Daee during his emergency room visit, "Dr. Daee wore a Suburban Hospital doctor's white lab coat and wore other identifying information with his name as the hospital's surgeon and he represented himself as the hospital's Emergency Department's surgeon." *Id*. at ¶ 9.

Plaintiff contends that Suburban Hospital's webpage suggests that the hospital is in charge of its Emergency/Trauma Care Department. *Id*. at ¶¶ 6, 9, 10.  And so, Plaintiff further contends that, "at all times[, he] was under the reasonable belief and expectation that Suburban Hospital took responsibility for its own Emergency/Trauma Care Department on-call surgeons." *Id*. at ¶ 9.  And so, Plaintiff seeks to recover "the maximum amount allowed by law for pain and suffering plus lost and reduced income over [his] remaining life" and to recover compensatory damages and "any other legal or equitable relief as justice requires and the evidence supports.  ECF No. 1 at ¶ 55; Prayer for Relief.

7

### B. Procedural History

Plaintiff commenced this civil action on January 17, 2020. ECF No. 1. On November 10, 2023, Defendants filed a motion for partial summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof. ECF Nos. 117, 117-1. On November 10, 2023, Plaintiff filed a cross-motion for partial summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof. ECF Nos. 119, 119-1.

On December 15, 2023, Defendants and Plaintiff filed their respective responses in opposition. ECF Nos. 123, 124. On December 29, 2023, Defendant and Plaintiff filed their respective reply briefs. ECF Nos. 125, 126.

The parties' cross-motions for partial summary judgement having been fully briefed, the Court resolves the pending motions.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co*., 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993). But a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*,

477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997).  And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).  When faced with cross-motions for summary judgment, the Court must review each motion separately on its own merits "to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger,* 122 F.3d 58, 62 n.4 (1st Cir.1997) (citation and internal punctuation omitted).  When considering each individual motion, the Court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion.  *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996).

### B.  Medical Negligence And Malpractice Claims

Under Maryland law, claims for medical negligence and medical malpractice require evidence regarding the following four elements: "(1) the defendant's duty based on an applicable standard of care, (2) a breach of that duty, (3) that the breach caused the injury claimed, and (4) damages." *Frankel v. Deane*, 480 Md. 682, 699 (2022) (quoting *Am. Radiology Servs., LLC v. Reiss*, 470 Md. 555, 579 (2020)); *see also Insley v. Wexford Health Sources, Inc.*, 2023 WL 4108268 at *3 (D. Md. June 21, 2023); *Univ. of Md. Med. Sys. Corp. v. Gholston*, 203 Md. App. 321, 330 (2012); *Barnes v. Greater Balt. Med. Ctr., Inc.,* 210 Md. App. 457, 480 (2013).  Maryland courts have held that the duty of care in the context of a medical malpractice lawsuit is "to exercise the degree of care or skill expected of a reasonably competent health care provider in the same or similar circumstances." *Crise v. Md. Gen. Hosp., Inc.*, 212 Md. App. 492, 521 (2013); *see also Shilkret v. Annapolis Emergency Hosp. Ass'n*, 276 Md. 187, 202 (1975) ("a

9

hospital is required to use that degree of care and skill which is expected of a reasonably competent hospital in the same or similar circumstances."). [3]

In this regard, "expert testimony is required to establish negligence and causation" in medical negligence and malpractice cases. *Rodriguez v. Clarke*, 400 Md. 39, 71 (2007) (quoting Meda v. Brown, 318 Md. 328, 339 (1990)); *see also Holzhauer v. Saks & Co.*, 346 Md. 328, 339 (1997); *Johns Hopkins Hosp. v. Genda*, 255 Md. 616, 623 (1969); *Am. Radiology Servs., LLC*, 470 Md. at 561 (expert testimony is needed to establish a *prima facie* case of medical negligence and malpractice, because the duty owed in a specialized expertise "may not be within the common knowledge of the average layperson juror."); *Frankel v. Deane*, 480 Md. 682, 699 (2022) (quoting *Stickley v. Chisholm*, 136 Md. App. 305, 313 (2001)) ("Because of the complex nature of medical malpractice cases . . . [plaintiffs must present expert testimony] to establish breach of the standard of care and causation."). And so, "summary judgment is appropriate if the plaintiff fails to come forward with admissible expert testimony on standard of care, breach, and causation." *Frankel*, 480 Md. at 699-700.

In addition, "while some courts have recognized claims for 'corporate negligence,' by finding that hospitals and clinics have a non-delegable duty of care to hospital or clinic patients in certain respects, no Maryland court has recognized the existence of a claim for 'corporate negligence.'" *Lucarelli v. Renal Advantage, Inc.*, 2009 WL 2730275 at *3 (D. Md. Aug. 25, 2009) (*citing Iodice v. United States*, 289 F.3d 270, 277 (4th Cir. 2002) and observing that Plaintiffs' "theories have not yet been clearly developed, articulated or embraced by Maryland state courts as part and parcel of well-established claims."). And so, Maryland does not have a well-developed law concerning corporate negligence. *Id.*; *see also Dunham v. Univ. of Md. Med.*

---

[3] The Fourth Circuit has held that expert testimony must be rejected by the Court where the subject matter is within the common knowledge of jurors. *Persinger v. Norfolk & Western Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999); *Scinto v. Stansberry*, 841 F.3d 219, 230 (4th Cir. 2016 ) (explaining that Federal Rule of Evidence 702(a) allows expert testimony only when it will help to the trier of fact of understand the evidence but "[w]hen laypersons are 'as capable of understanding the primary facts and drawing correct conclusions from them' as are experts, expert testimony may properly be excluded"); *see also Green v. Obsu*, 2022 WL 2971950, at *20 (D. Md. Jul. 27, 2022) (explaining that under Maryland law, "expert testimony is ordinarily required to establish the standard of care, breach of the standard of care, and causation" in medical malpractice cases).

*Ctr.*, 237 Md. App. 628, 651 (2018) (observing that "the issue of direct corporate liability of a hospital is an interesting and *novel* one") (emphasis supplied).

### C. The Apparent Agency Doctrine

Lastly, the doctrine of apparent agency is an exception to the general rule that "one who engages an independent contractor is not vicariously liable for the negligence of the contractor." *Bradford v. Jai Med. Sys. Managed Care Orgs., Inc.*, 439 Md. 2, 16 (2014) (citing *Rowley v. Mayor & City Council of Balt.*, 305 Md. 456, 461-62 (1986)).  Given this, a principal can be held responsible for the acts of another when the principal, by its words or conduct, has represented that an agency relationship existed between the apparent principal and its apparent agent.  *See Debbas v. Nelson*, 389 Md. 364, 385 (2005); *Mehlman v. Powell*, 281 Md. 269, 273 (1977) (quoting *B.P. Oil Corp. v. Mabe*, 279 Md. 632, 643 (1977)).  And so, a plaintiff must show three things to establish an apparent agency relationship:

1. The apparent principal must create, or acquiesce in, the appearance that an agency relationship existed.
2. Plaintiff must believe that an agency relationship existed and rely on that belief in seeking the services of the apparent agent.
3. Plaintiff's belief that an agency relationship existed and Plaintiff's reliance on that belief must be objectively reasonable.

*Bradford*, 439 Md. at 18 (citing *Chevron U.S.A., Inc. v. Lesch*, 319 Md. 25, 34-35 (1990)); *Williams v. Dimensions Health Corp.*, 480 Md. 24, 38 (2022).

### IV. ANALYSIS

The parties have filed cross-motions for partial summary judgment on several issues.

First, the Defendants argue that they are entitled to summary judgment on all of Plaintiff's claims against Suburban Hospital Healthcare System, Inc., because there are no factual allegations in the complaint to support these claims.  ECF No. 117-1 at ¶¶ 5-6.  The Defendants also argue that they are entitled to summary judgment on Plaintiff's corporate negligence and medical negligence and malpractice claims, except for the claim based upon *respondeat superior*, because Plaintiff has not designated an expert to establish the standard of care, or that there was a breach of that standard of care, relevant to these claims.  *Id.* at ¶¶ 7-8. Lastly, the Defendants argue that they are entitled to summary judgment on Plaintiff's claims for lost profits, loss of income and lost investment, because: (1) Plaintiff has not put forward evidence to show that he lost any profits with a reasonable certainty; (2) Plaintiff lacks medical

11

expert testimony to show a causal link between the alleged negligence in this case and his claim that he was unable to work after January 13, 2016; and (3) Maryland law does not allow for Plaintiff to recover lost investments that occurred before the alleged negligent conduct in this case occurred. *Id.* at ¶¶ 9-19.

Plaintiff counters that he may pursue his claims for corporate negligence and medical negligence and malpractice, because he is not obligated to provide expert testimony to support these claims. ECF No. 123 at 27-28. Plaintiff also argues that he may pursue his claims seeking to recover lost profits and lost income, because he has put forward evidence to support these claims. *Id.* at 28-30. And so, Plaintiff requests that the Court deny the Defendants' motion for partial summary judgment. *Id*. at 35.

Plaintiff has also moved for summary judgment in his favor on the following three issues: (1) whether the undisputed material facts show that Dr. Daee was an apparent agent of Suburban Hospital when he performed the laparoscopic cholecystectomy on Plaintiff; (2) whether the undisputed material facts show that Dr. Daee's surgery caused his bile duct injury; and (3) whether the undisputed material facts show that Suburban Hospital was negligent in the selection, training and supervision of Dr. Daee. ECF No. 119-1 at 32-35. The Defendants counter that summary judgment on these issues is not warranted, because: (1) there are genuine disputes of material fact regarding whether Dr. Daee was an apparent agent of Suburban Hospital; (2) the question of whether Dr. Daee's surgery resulted in Plaintiffs bile duct injury is not an appropriate issue for summary judgment; and (3) Plaintiff's claim that Suburban Hospital was negligent in the selection, training and supervision of Dr. Daee lacks merit. ECF No. 124 at 2-10. And so, the Defendants request that the Court deny Plaintiff's cross-motion for partial summary judgment. *Id.* at 10.

For the reasons set forth below, a careful reading of the complaint shows that there are no factual allegations in the complaint to support Plaintiff's negligence claims against Suburban Hospital Healthcare System, Inc. The undisputed material facts in this case also make clear that Plaintiff cannot prevail on his negligence claims against the remaining Defendants, with the exception of his *respondeat superior* claim, because he has not put forward an expert to establish the standard of care, or breach of that standard of care, to support these claims.

In addition, the undisputed material facts show that Plaintiff cannot prevail on his claim for lost profits, because he fails to put forward any evidence to show that he lost any profits with

12

a reasonable certainty due to the negligent conduct alleged in this case.  The evidentiary record in this case also makes clear that there are genuine issues regarding material facts about whether Dr. Daee was an apparent agent of Suburban Hospital, when he performed the laparoscopic cholecystectomy on Plaintiff, which preclude summary judgment on this issue.  Lastly, the Defendants persuasively argue that that the question of whether Dr. Daee caused Plaintiff's bile duct injury is an issue for the jury and, thus, not appropriate for resolution by summary judgment.  And so, the Court: (1) **GRANTS-in-PART** the Defendants' motion for partial summary judgment; (2) **DENIES** Plaintiff's cross-motion for partial summary judgment; (3) **DISMISSES** Defendant Suburban Hospital Healthcare System, Inc. as a defendant in this action; (4) **DENIES** Plaintiff's negligence claims, except for the claim based upon *respondeat superior*; and (5) **DENIES** Plaintiff's claim for lost profits.

### A. The Defendants Are Entitled To Summary Judgment On Plaintiff's Claims Against Suburban Hospital Healthcare System, Inc.

As an initial matter, the Defendants are entitled to summary judgment on Plaintiff's clams against Suburban Hospital Healthcare System, Inc., because Plaintiff alleges no facts to support these claims.  While Suburban Hospital Healthcare System, Inc. is a named defendant in this civil action, a careful reading of the complaint shows that the complaint lacks factual allegations to show either that: (1) Suburban Hospital Healthcare System, Inc. provided any medical care to Plaintiff; (2) an apparent agency relationship exists between Dr. Daee and Suburban Hospital Healthcare System, Inc.; or (3) Suburban Hospital Healthcare System, Inc. had any role in Plaintiff's surgeries.  *See generally*, ECF No. 1.  The parties also appear to agree that Suburban Hospital Healthcare System, Inc. should not be a named defendant in his case. ECF No. 117-1 at 7-9; ECF No. 123 at 26.  And so, the Court GRANTS the Defendants' motion for partial summary judgment with regards to Plaintiff's claims against Suburban Hospital Healthcare System, Inc. and DISMISSES Suburban Hospital Healthcare System, Inc as a named defendant in this matter.

### B. The Defendants Are Entitled To Summary Judgment On Plaintiff's Negligence Claims Based Upon Failure To Select, Train And Supervise

Turning to the merits of Plaintiff's negligence claims, the Defendants persuasively argue that they are entitled to summary judgment on these claims, to the extent that the claims are based upon the Defendants' alleged failure to select, train and supervise Dr. Daee and other hospital trauma physicians. ECF No. 117-1 at 9-10.

In Counts I and II of the complaint, Plaintiff alleges that Suburban Hospital was negligent by, among other things, "failing to adequately train and/or permitting Defendant Daee to provide substandard care" and that Suburban Hospital also "failed in the selection, training and supervision of its trauma doctors." ECF No. 1 at ¶¶ 46(g), 52. To prevail on these claims, Plaintiff must establish, among other things, the standard of care for selecting, training and supervising trauma physicians, and that the Defendants breached that standard of care in this case. *See, e.g.*, *Frankel v. Deane*, 480 Md. 682, 699 (2022) (quoting *Am. Radiology Servs., LLC v. Reiss*, 470 Md. 555, 579 (2020). To accomplish this, Maryland law requires that Plaintiff present expert testimony to establish a breach of the applicable standard of care and causation. *Id*.

It is undisputed in this case that Plaintiff has not designated an expert to provide testimony regarding the applicable the standard of care that Suburban Hospital must satisfy in selecting, training and supervising Dr. Daee and the hospital's other trauma physicians. ECF No. 123 at 28; ECF No. 126 at 17-22. In fact, a careful reading of the expert report prepared by Plaintiff's medical expert, Dr. John G. Olinde, shows that Dr. Olinde does not address the standard of care for selecting, training and supervising trauma physicians, or how the defendants allegedly breached this standard of care, in his expert report. *See generally* ECF No. 119-8. With regards to Plaintiff's corporate negligence claim, the Court also observes that Maryland does not have a well-developed law concerning "corporate negligence" within the context of hospitals and health care providers. *Lucarelli v. Renal Advantage, Inc.*, 2009 WL 2730275 at *3 (D. Md. Aug. 25, 2009) (*citing Iodice v. United Staes*, 289 F.3d 270, 277 (4th Cir. 2002); *see also Dunham v. Univ. of Md. Med. Ctr.*, 237 Md. App. 628, 651 (2018) (observing that "the issue of direct corporate liability of a hospital is an interesting and *novel* one"). Given this, it is not clear that Plaintiff can pursue a corporate negligence claim against the Defendants under Maryland law.

14

But, to the extent that Plaintiff may bring such a claim, he must establish the applicable standard of care, and the breach of that standard, to prevail on his corporate negligence claim. *See Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 806 (D. Md. 2022) (holding that expert testimony is: (1) generally required in a negligence action to establish the applicable standard of care for a profession, and (2) required to establish the standard of care where "knowledge of adequate training and supervision . . . is not within common knowledge or experience."). And so, the lack of an expert testimony to establish the standard of care similarly dooms this claim.

Because Plaintiff lacks an expert to establish the standard of care for selecting, training and supervising physicians, or to shoe how the Defendants breached that standard of care in this case, he cannot prevail on his negligence claims. And so, the Court GRANTS the Defendants' motion for partial summary judgment on these claims.[4]

### C. Plaintiff Cannot Prevail On His Claim For Lost Profits

Plaintiff's claim seeking to recover lost profits from the Defendants is also problematic. In the complaint, Plaintiff seeks to recover "lost and reduced income over" his remaining life and, specifically to recover losses of approximately $350,000 for lost time and investment in establishing an entity known as "Global Hay Trading F.Z.E" and estimated lost profits and income due to Global Hay Trading "having to be shutdown" following his alleged injuries. ECF No. 1 at ¶ 55; ECF No. 117-3 at 3. To recover lost profits from the Defendants, Plaintiff must prove his alleged losses with reasonable certainty. *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 202 Md. App. 307, 333 (2011), *aff'd*, 429 Md. 387 (2012). And so, his claim for lost profits cannot be based upon speculation or conjecture. *John D. Copanos & Sons, Inc. v. McDade Rigging & Steel Erection Co.*, 43 Md. App. 204, 208 (1979) ("The real concern in considering lost profits as an element of damages is not whether the business is old or new, but rather whether anticipated profits *can be shown with reasonable certainty so that the evidence rises above speculation or conjecture*.") (emphasis added).

Here, the undisputed material facts show that Plaintiff cannot establish his lost profits with a reasonable certainty. Plaintiff concedes that he has been unable to travel to Ajam, United Arab Emirates to gather the necessary documents to support his lost profits damages claim. ECF

---

[4] Plaintiff's negligence claim against Suburban Hospital based upon the theory of *respondeat superior* is not disturbed by the Court's ruling.

No. 123 at 29. Plaintiff also concedes that his Global Hay Trading-related damages are based upon his own projections, rather than evidence. *Id*. Given this, Plaintiff's claim to recover lost profits is impermissibly based upon speculation and conjecture and the Court must also GRANT the Defendants' motion for partial summary judgment on this claim.[5]

### D. There Are Genuine Issues In Dispute About Whether Dr. Daee Was An Was An Apparent Agent Of Suburban Hospital

As a final matter, Plaintiff has not shown that he is entitled to summary judgment on the three issues raised in his cross-motion for partial summary judgment for several reasons.

First, the evidentiary record before the Court makes clear that there are genuine issues of material fact in dispute regarding whether Dr. Daee was an apparent agent of Suburban Hospital that preclude entry summary judgment on this issue. Under Maryland law, a principal can be held responsible for the acts of another when the principal, by its words or conduct, has represented that an agency relationship existed between the apparent principal and its apparent agent. *See Debbas v. Nelson*, 389 Md. 364, 385 (2005); *Mehlman v. Powell*, 281 Md. 269, 273 (1977) (quoting *B.P. Oil Corp. v. Mabe*, 279 Md. 632, 643 (1977)). And so, to establish an apparent agency relationship between Dr. Daee and Suburban Hospital here Plaintiff must show the following three things:

1. The apparent principal must create, or acquiesce in, the appearance that an agency relationship existed.
2. Plaintiff must believe that an agency relationship existed and rely on that belief in seeking the services of the apparent agent.
3. Plaintiff's belief that an agency relationship existed and Plaintiff's reliance on that belief must be objectively reasonable.

*Bradford v. Jai Med. Sys. Managed Care Orgs., Inc.*, 439 Md. 2, 18 (2014) (citing *Chevron U.S.A., Inc. v. Lesch*, 319 Md. 25, 34–35 (1990)); *Williams v. Dimensions Health Corp.*, 480 Md. 24, 32 (2022).

In this case, Plaintiff largely relies upon his own Affidavit to show that there was an apparent agency relationship between Dr. Daee and Suburban Hospital. But, the Court agrees

---

[5] The Defendants also persuasively argue that Plaintiff cannot recover any lost investments that occurred prior to the alleged negligence as damages in this case. ECF No. 117 at ¶ 16.

16

with the Defendants this evidence is insufficient to establish that Dr. Daee was an "apparent agent" of Suburban Hospital.

Plaintiff states in his Affidavit that he reasonably believed that Dr. Daee was an agent of Suburban Hospital, because, among other things, he reviewed the hospital's website and that he relied upon certain information contained therein, in deciding to go to the emergency room at the hospital to receive medical care. ECF No. 119-2 at ¶¶ 5-7. In this regard, Plaintiff maintains that the impression left from the hospital's website was that the hospital's Emergency/Trauma Care Department was a part of Johns Hopkins Medicine and that the hospital managed and controlled that department and its on-call surgeons including Dr. Daee. *Id.* at ¶ 9.

But, as the Defendants correctly observe, there are genuine issues of material fact in dispute in this case about whether Plaintiff viewed Suburban Hospital's website before coming to the hospital's emergency room for medical care on October 10, 2015, and whether this influenced his decision to seek treatment at the hospital. ECF No. 124 at 4. There is also evidence before the Court that appears to contradict Plaintiff's account of what influenced his decision to seek medical care at Suburban Hospital, because Plaintiff testified during his deposition that he chose to go to Suburban Hospital because "[Suburban [Hospital] . . . was the closest hospital. It was only like two miles away from Bellwood Road. So I went there . . . ." ECF No. 117-7 at 3 (45:6-8); ECF No. 117-1 at 8-9.

Given these factual disputes, a jury will need to weigh Plaintiff's testimony, and the evidence to be presented by the Defendants on this issue, to determine what motivated Plaintiff's visit to Suburban Hospital's emergency room and whether Dr. Daee was an apparent agent of Suburban Hospital. For this reason, the Court must DENY Plaintiff's cross-motion for partial summary judgment on this issue.

The remaining issues for which Plaintiff seeks entry of summary judgment are also not appropriate for such a disposition. As the Defendants correctly observe, the issue of whether Dr. Daee's surgery caused Plaintiff's bile duct injury is an issue for the jury to determine after considering all of the evidence in this case. ECF No. 124 at 8-10. As discussed above, Plaintiff also cannot prevail on his negligence claims based upon Suburban Hospital's failure to select, train and supervise Dr. Daee, because he lacks expert testimony to establish the standard of care

and how that standard was breached in this case. And so, the Court also DENIES Plaintiff's cross-motion for partial summary on these final two issues.

V.    CONCLUSION

In sum, a careful reading of the complaint shows that Plaintiff fails to allege any factual allegations against Suburban Hospital Healthcare System, Inc. to support his claims against this defendant. The undisputed material facts also make clear that Plaintiff cannot prevail on his negligence claims based upon failure to select, train and supervise Dr. Daee, because he has not put forward an expert to establish the standard of care, or a breach of that standard of care, to support these claims.

The undisputed material facts also show Plaintiff cannot prevail on his claim for lost profits, because he puts forward no evidence to establish any lost profits with a reasonable certainty. There are also genuine issues in dispute regarding material facts about whether Dr. Daee was an apparent agent of Suburban Hospital when he performed the laparoscopic cholecystectomy on Plaintiff. Lastly, the issue of whether at Dr. Daee caused Plaintiff's bile duct injury is an issue for the jury to determine after considering the evidence in this case. And so, for the foregoing reasons, the Court:

(1) **GRANTS-in-PART** the Defendants' motion for partial summary judgment;

(2) **DENIES** Plaintiff's cross-motion for partial summary judgment;

(3) **DISMISSES** Defendant Suburban Hospital Healthcare System, Inc. as a defendant in this action;

(4) **DENIES** Plaintiff's corporate negligence and medical negligence and malpractice claims, except for the claim based upon *respondeat superior*; and

(5) **DENIES** Plaintiff's claim for lost profits.

A separate Order shall issue.

**IT IS SO ORDERED.**

    s/Lydia Kay Griggsby
    LYDIA KAY GRIGGSBY
    United States District Judge